1

2

3      UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF WASHINGTON
4

5
   JERRY CORRAL,                        No. 2:13-cv-3056-FVS
6
                   Plaintiff,
7                                       ORDER GRANTING PLAINTIFF'S
   vs.                                  MOTION FOR SUMMARY JUDGMENT
8                                       AND DENYING DEFENDANT'S
   CAROLYN W. COLVIN, Acting            MOTION FOR SUMMARY JUDGMENT
9  Commissioner of Social Security,

10                 Defendant.

11         BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 26, 27.)

12  Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney Lars J.

13  Nelson represents defendant. After reviewing the administrative record and briefs filed by the

14  parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's

15  Motion for Summary Judgment.

16                            **JURISDICTION**

17         Plaintiff Jerry Corral (plaintiff) protectively filed for disability insurance benefits (DIB)

18  on November 29, 2006. (Tr. 104, 204, 237.) Plaintiff alleged an onset date of August 8, 2005.

19  (Tr. 55, 204) Benefits were denied initially and on reconsideration. (Tr. 119, 123.) Plaintiff

20  requested a hearing before an administrative law judge (ALJ), which was held before ALJ W.

21  Howard O'Bryan, Jr., on July 8, 2009. (Tr. 55-64.) The ALJ denied benefits (Tr. 104-13) but the

22  Appeals Council vacated ALJ O'Bryan's decision and remanded the case to another ALJ. (Tr.

23  115-18.) A second hearing was held before ALJ Riley J. Atkins on May 24, 2012. (Tr. 68-98.)

24  Plaintiff was represented by counsel and testified at the hearing. (Tr. 56-73.) Vocational expert

25  Amberly Ruck also testified. (Tr. 91-97.) The ALJ again denied benefits (Tr. 12-27) and the

26  Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42

27  U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was in an automobile accident in 2005. (Tr. 71.) He has work experience as a coordinator at a funeral home, security guard, administrative assistant, health care driver, program coordinator, and supervisor. (Tr. 91-92, 257.) Plaintiff testified he gets overwhelmed in stressful situations. (Tr. 77.) He has been treated for depression. (Tr. 81.) He has difficulty using his hands because his fingers get cramps. (Tr. 82.) His lower back burns and throbs after too much sitting. (Tr. 84.) He gets muscle spasms in his left shoulder. (Tr. 84.) He gets numbness on his right side. (Tr. 85.) Sometimes his right leg gives out and he falls. (Tr. 85.) He needs help sitting down. (Tr. 85.) He has a hard time showering and sometimes needs help. (Tr. 85.) He has difficulties with vertigo and dizziness. (Tr. 86.) He has two or more dizzy spells per day. (Tr. 86-87.) He gets severe headaches on a daily basis. (Tr. 87.) His balance is bad. (Tr. 88.) He needs to lie down two to three times during the day. (Tr. 88.) Noise irritates him. (Tr. 89.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision

of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

However, a finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). If drug or alcohol addiction is a

material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of August 8, 2005 through his date last insured of December 31, 2010. (Tr. 14.) At step two, the ALJ found plaintiff has the following severe impairments: chronic back pain, mild traumatic brain injury, dependent personality disorder, anxiety disorder, and pain disorder (with both psychological features and a general medical condition). (Tr. 15.) At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1, through the date insured. (Tr. 15.) The ALJ then determined:

> [T]hrough the date last insured, claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: perform only unskilled work; and no more than occasional, infrequent contact with the public.

(Tr. 16). At step four, the ALJ found plaintiff was unable to perform past relevant work through the date last insured. (Tr. 25.) After considering plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determined there were jobs that existed in significant numbers in the national economy that the plaintiff could have performed. (Tr. 25.) Thus, the ALJ concluded plaintiff was not under a disability as defined in the Social Security Act from August 8, 2005, the alleged onset date, through December 31, 2010, the date last insured. (Tr. 26.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) improperly rejecting the opinions of plaintiff's treating and examining medical providers; (2) finding plaintiff's symptoms allegations were not credible; (3) concluding plaintiff's mental impairments do not meet or medically equal a Listing at step three; and (4) determining that plaintiff can perform

jobs existing in significant numbers in the national economy.[1] (ECF No. 26 at 13-27.) Defendant argues the ALJ: (1) made a step three finding supported by substantial evidence and free from error; (2) provided valid reasons for the weight assigned to select medical opinions; (3) provided valid reasons for discounting plaintiff's subjective complaints; (4) made a step five finding supported by substantial evidence and free from legal error. (ECF No. 27 at 3-20.)

**DISCUSSION**

**1.     Opinion Evidence**

Plaintiff argues the ALJ erred by improperly rejecting the opinions of Dr. Brown and Dr. Drew. (ECF No. 26 at 13-18.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). The opinions of Dr. Brown and Dr. Drew are contradicted by the opinion of Dr. Duvall, who opined there is no evidence of a serious

---

[1] Although plaintiff initially also alleged disabling physical impairments, plaintiff's appeal only addresses the ALJ's determination that his severe mental impairments are not disabling. (ECF No. 26 at 5.)

psychiatric disorder. (Tr. 1732-34.) Thus, the ALJ was required to provide specific, legitimate reasons supported by substantial evidence in rejecting the opinions of Drs. Brown and Drew.

a.    **Dr. Brown**

In April 2011, Dr. Brown completed a psychological assessment summary. (Tr. 1752-53.) She diagnosed dementia due to head trauma, provisional; anxiety disorder NOS; and depression disorder NOS. (Tr. 1752.) After four visits with plaintiff, Dr. Brown indicated his disabilities include profound memory difficulties and struggles with word retrieval. (Tr. 1708.) She opined plaintiff shows significant impairment which would prevent him from working even at a low-demand, part-time position. (Tr. 1709.) Dr. Brown indicated plaintiff's cognitive function is poor despite plaintiff's strong desire and effort to do his best, and that his work performance would be highly variable. (Tr. 1709.) In August 2011, Dr. Brown completed a Mental Residual Functional Capacity Assessment form and opined that plaintiff is markedly limited in nine functional areas and severely limited in one functional area. (Tr. 1740-42.)

The ALJ gave Dr. Brown's opinion little weight for two reasons. First, the ALJ rejected the opinion because it is inconsistent with objective evidence that plaintiff gave poor effort. (Tr. 20.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ concluded the neuropsychological evaluations "raised questions about his effort and the extent of his symptoms." (Tr. 18.)

The first neuropsychological evaluation was conducted by Dr. Thompson in April 2006. (Tr. 755-67.) The ALJ reported Dr. Thompson found plaintiff passed "most" of the tests designed to evaluate malingering. (Tr. 18.) Dr. Thompson administered three formal tests to evaluate plaintiff's effort and all three tests indicated plaintiff "was giving good effort at all times." (Tr. 761.) Dr. Thompson also monitored plaintiff's effort through two informal methods. (Tr. 761.) Plaintiff passed one but failed the other, though Dr. Thompson qualified the failure: "However, the one he failed was in the area of mental control and attention span, an overall area of major weakness for him. Therefore, it is thought he had consistent effort throughout all of his testing." (Tr. 761.) Thus, Dr. Thompson's report is not evidence of poor effort.

Dr. Muscatel completed a neuropsychological evaluation in April 2007. (Tr. 19, 1188-1201.) The ALJ pointed out Dr. Muscatel mentioned plaintiff gave "uneven" effort on memory testing. (Tr. 19, 1199.) Dr. Muscatel explained: "In terms of testing effort, he was inadequate in

effort on the verbal list learning task but performed adequately on the TOMM [Test of Memory Malingering] and CTAM." (Tr. 1200.) The ALJ concluded plaintiff's test results pursuant to Dr. Muscatel's are "in doubt" due to inconsistent effort. (Tr. 19.) However, Dr. Muscatel did not appear to believe the test results are skewed or unreliable. Indeed, Dr. Muscatel opined plaintiff could work in a routine environment "but his attentional efficiency is substantially reduced and would represent an issue for most jobs." (Tr. 1200.) Dr. Millican, a neurologist, reviewed Dr. Muscatel's findings and concurred with the constraints on plaintiff's ability to work from a neurocognitive perspective. (Tr. 1237-38.) Although Dr. Muscatel did refer to "uneven" effort, the reference was to one task during a portion of the testing. (Tr. 1200.) Dr. Muscatel did not make any findings suggesting that plaintiff's overall effort was unreliable or his test scores were in doubt. Thus, this is not evidence raising questions about plaintiff's effort and symptoms as suggested by the ALJ.

Another neuropsychological evaluation was completed by Dr. Drew in November 2008. (Tr. 19, 1621-31.) Dr. Drew concluded the results of the previous neuropsychological evaluations by Dr. Thompson and Dr. Muscatel were similar. (Tr. 1623.) Dr. Drew summarized an additional report prepared by Dr. Muscatel in April 2008, which is not part of the record. (Tr. 1623.) Dr. Drew reported Dr. Muscatel's April 2008 findings noted plaintiff's effort was not adequate and the diagnoses included rule out malingering. (Tr. 1623.) During Dr. Drew's testing, however, plaintiff's score on the formal test for effort was in the normal range, which Dr. Drew noted was consistent with his own observations. (Tr. 1628.) Dr. Drew also pointed out his findings regarding effort were consistent with Dr. Thompson's findings and Dr. Muscatel's first report, but differed from Dr. Muscatel's second report. (Tr. 1628.) Dr. Drew opined:

> Mr. Corral has undergone four neuropsychological evaluations. The results of the first two are very consistent with this evaluation. The second evaluation by Dr. Muscatel shows the same pattern of symptoms, however, an increased level of impairment. Dr. Muscatel noted the patient did not give adequate effort in that evaluation and this appears to explain the lower test scores. Dr. Muscatel questioned whether the patient may have been malingering, which is certainly a valid question given his performance on Dr. Muscatel's second evaluation. One of the hallmarks of malingering is inconsistency. There is no way a person can exacerbate his symptoms or fake his symptoms consistently over three different neuropsychological evaluations spaced out in the area of a year apart. It does appear as though Mr. Corral (for whatever reason) did not perform as well with his second evaluation with Dr. Muscatel. Many things can affect neuropsychological test results, including attitude, current pain level, emotional

status, and so forth. It is notable the pattern of deficits is almost identical. However, the degree of deficits appears to be consistently higher across much of the test results obtained in the second evaluation by Dr. Muscatel. Dr. Muscatel notes he is unable to tell if there are residual cognitive deficits because of the lack of effort in his second evaluation. *That was not, however, a problem during this evaluation and the residual deficits do remain, which are consistent with his first two neuropsychological evaluations.*

(Tr. 1629, emphasis added). Thus, Dr. Drew specifically addressed concerns about inconsistent or inadequate effort and made findings regarding plaintiff's deficits notwithstanding those concerns. Thus, Dr. Drew's findings are not evidence of inadequate effort during testing.

The last neuropsychological evaluation in the record is Dr. Duvall's July 2011 report and Medical Source Statement of Ability to Do Work-related Activities form. (Tr. 1722-34.) Dr. Duvall concluded plaintiff "often seemed to give less than full effort on the testing." (Tr. 1727.) Dr. Duvall found plaintiff's test scores were not credible as they placed him well within the mildly retarded range, inconsistent with someone who graduated from high school and who previously had higher test scores. (Tr. 1728.) Results of the TOMM indicated plaintiff attempted to portray himself as more cognitively impaired than would be expected and the MMPI results were invalid due to excessive endorsement of pathological symptoms. (Tr. 1729.) As a result, Dr. Duvall diagnosed plaintiff with malingering. (Tr. 1730.) Dr. Duvall inferred plaintiff has no limitations based on his behavior and malingered test results. (Tr. 1732.) Dr. Duvall's report indicates plaintiff gave poor effort on Dr. Duvall's testing. (Tr.1727.)

Thus, three of the four neuropsychological evaluations in the record do not suggest plaintiff was malingering or conclude that test results are skewed based on poor effort.[2] Indeed, based on Dr. Duvall's findings, when plaintiff gave poor effort, his test results were notably lower than the three previous tests results and lower than expected of someone with plaintiff's background and daily functioning. Thus, it follows that when no significant lack of effort was noted and his test scores were higher, plaintiff's test scores were more likely to be accurate. Furthermore, plaintiff's alleged poor effort at testing conducted by Dr. Thompson, Dr. Muscatel,

---

[2] Because Dr. Muscatel's second evaluation is not part of the record and is not addressed by the ALJ, it is not considered as part of the weight of the evidence. However, Dr. Brown's summary of Dr. Muscatel's second evaluation suggests it is somewhat consistent with Dr. Duvall's findings. That is, when plaintiff gives poor effort, his test results are significantly affected. It follows that when plaintiff gave adequate effort, reasonably accurate test results would have been obtained.

Dr. Drew and Dr. Duvall has little to do with the reliability of Dr. Brown's findings. The ALJ pointed to nothing in Dr. Brown's records suggesting a lack of effort or malingering while Dr. Brown treated and evaluated plaintiff. Dr. Brown's conclusion that plaintiff's cognitive function is poor and he has difficulties with memory and word retrieval appear to be similar to the findings of Dr. Thompson, Dr. Muscatel and Dr. Brown. The inconsistent findings are those of Dr. Duvall, who found no limitations.

Thus, the ALJ's assertion that Dr. Brown's findings are inconsistent with objective evidence that plaintiff gave poor effort (Tr. 20) is not based on substantial evidence. The ALJ's conclusion that the neuropsychological evaluations "raised questions about his effort and the extent of his symptoms" is an overstatement of the evidence. Only Dr. Duvall raised questions about plaintiff's effort during neuropsychological evaluations and his objective test results reflect that lack of effort. The ALJ's first reason for rejecting Dr. Brown's opinion is not supported by the evidence and is therefore not a specific, legitimate reason for rejecting it.[3]

The second reason the ALJ rejected Dr. Brown's opinion is because "it does not appear that Dr. Brown reviewed the prior medical evidence, which addressed questions about the claimant's credibility regarding complaints of memory and concentration difficulties." (Tr. 20.) An ALJ's inferences may be upheld if they are reasonably drawn from the record. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (2004). However, the ALJ's inference that Dr. Brown did not review the record is not reasonably supported by the record. In May 2011, Dr. Brown wrote a letter to plaintiff's attorney describing some of her observations and requesting "a copy of any neuropsychological assessments conducted since the accident." (Tr. 1708.) Dr. Brown's August 5, 2011 session notes state: "Discussed information from documents received from his disability lawyer . . . I noted the information suggested his brain injury was impacting his ability to filter extraneous stimuli, maintain concentration which led to inadvertent mistakes."

---

[3] Defendant also cites as evidence of poor effort Dr. Palmatier's office visit note dated October 23, 2006. (ECF No. 27 at 7.) During a physical examination, Dr. Palmatier noted there was "some question about his effort on this today. It does not seem like he is putting much effort into this." (Tr. 1573.) This does not constitute substantial evidence of a lack of effort justifying rejection of Dr. Brown's findings. Dr. Palmatier also noted on the same date that plaintiff reported some problems with headaches and his ability to remember and concentrate on tasks. (Tr. 1573.) Dr. Palmatier noted plaintiff was somewhat tearful when describing his problems with forgetting things. (Tr. 1573.) With respect to his mental health, plaintiff's self-report and behavior with Dr. Palmatier appear to be somewhat consistent with Dr. Brown's findings.

1    (Tr. 1744.) This suggests Dr. Brown may have had the chance to review earlier medical

2    evidence. Thus, the ALJ's conclusion that Dr. Brown did not review prior medical evidence is

3    not a reasonable inference based on the evidence. As a result, the ALJ's second reason for

4    rejecting Dr. Brown's opinion is not supported by substantial evidence. The ALJ did not provide

     specific, legitimate reasons for rejecting Dr. Brown's opinion and therefore the ALJ erred.

5            **b.    Dr. Drew**

6            Plaintiff argues the ALJ improperly rejected the opinion of Dr. Drew, who completed a

7    neuropsychological evaluation in November 2008. (ECF No. 26 at 16-18, Tr. 1621-31.) In

8    addition to the findings discussed *supra*, Dr. Drew diagnosed cognitive disorder due to post-

9    concussion syndrome with symptoms including depression and somatic focus. (Tr. 1629.) Dr.

10   Drew concluded that the residual cognitive deficits of plaintiff's head injury are permanent. (Tr.

11   1630.) Dr. Drew noted it is questionable whether plaintiff would be able to return to employment

12   due to his residual cognitive deficits and the emotional sequelae of his closed head injury. (Tr.

13   1631.) Dr. Drew recommended further treatment, but noted it is unclear whether treatment would

     be successful enough to enable plaintiff to return to work. (Tr. 1631.)

14           The ALJ first rejected Dr. Drew's opinion because it is inconsistent with other evidence.

15   (Tr. 19.) More specifically, the ALJ found Dr. Drew did not explain how the plaintiff's mild

16   brain injury resulted in severe symptoms. (Tr. 19.) A medical opinion may be rejected if it is

17   unsupported by medical findings. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th

18   Cir. 2009); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v.

19   Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

20   2001), *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ's finding is not

21   supported by the record. First, Dr. Drew summarized Dr. Thompson's findings, which tied

     plaintiff's injury to the pattern of deficits in his brain functioning. (Tr. 1623.) Second, Dr. Drew

22   linked the MMPI-2 results of Drs. Thompson and Muscatel to plaintiff's head injury:

23       The results showed elevations in scales consistent with a closed head injury.
         Research shows these elevations often result in what is known as Conversion B
24       pattern with somatic problems, anxiety, distress and depression being common
         symptoms of direct closed head injury of this type. All the neuropsychological
25       evaluations note the patient is very focused on somatic complaints, primarily
         pain related, and is somewhat histrionic in his reactions. This is not unusual after
26       a brain injury of this type.

27

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

(Tr. 1628.) Third, Dr. Drew explained the results of the battery of tests he administered "indicate he is demonstrating residual symptoms consistent with closed head, injury-related Post Concussive Syndrome." (Tr. 1629.) Lastly, Dr. Drew opined plaintiff's neuropsychological deficits and cognitive sequelae are a direct result of his August 8, 2005 closed head injury. (Tr. 1630.) Although Dr. Duvall disagreed with Dr. Drew's opinion on this issue, the assertion that Dr. Drew did not explain the link between plaintiff's brain injury and symptoms is not accurate. This reason for rejecting Dr. Drew's opinion is therefore not supported by the evidence.

The ALJ also noted that Dr. Drew stated plaintiff's symptoms and test results have been consistent throughout multiple examinations, but that does not necessarily mean plaintiff's test results are valid, as pointed out by Dr. Duvall. (Tr. 19.) The ALJ concluded that consistency of subjective symptoms does not justify a finding that plaintiff could not work. (Tr. 19.) These general statements do not explain why Dr. Drew's findings are less reliable or constitute a specific, legitimate reason justifying rejection of the opinion. The ALJ suggests Dr. Drew's findings are based primarily on the consistency of plaintiff's reported symptoms. (Tr. 19.) While Dr. Drew did comment that the pattern of deficits were almost identical over all the neuropsychological testing (Tr. 1629), his opinion is based on more than consistency of symptoms and test results, including a review of medical records, personal interview, a number of objective test and subtests, and professional observations and interpretation. (Tr. 1621-31.)

There is a conflict between the findings of Dr. Drew, who opined it would be virtually impossible for a person to malinger and obtain similar test results over four test sessions, and the findings of Dr. Duvall, who opined plaintiff malingered and the consistency of subjective symptoms does not justify a finding that plaintiff could not work. The ALJ is charged with resolving conflicts in the evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). However, while it is the ALJ's duty to resolve the conflict, if the resolution of the conflict involves rejecting Dr. Drew's opinion, the ALJ must do so by citing specific, legitimate reasons supported by substantial evidence. The ALJ's summaries and conclusions about the evidence are inaccurate or overstatements of the evidence. Therefore substantial evidence does not support the ALJ's reasoning. As a result, the ALJ failed to properly reject the opinion of Dr. Drew.

Furthermore, the ALJ assigned significant weight to Dr. Duvall's findings although Dr. Duvall's findings of no mental limitations differed from the conclusions of the two treating (Dr. Thompson and Dr. Brown) and two other examining (Dr. Drew and Dr. Muscatel) neuropsychologists. The deviation of Dr. Duvall's conclusions from the four other treating and examining neuropsychologists' relatively consistent findings and conclusions suggests further consideration of Dr. Duvall's report may be warranted. In particular, Dr. Duvall noted plaintiff "actually became hostile and called me a name during the first part of the interview" when he thought Dr. Duvall's facial expression were mocking. (Tr. 1724.) Plaintiff similarly reported to Dr. Brown that the appointment with Dr. Duvall went "really bad" and he thought he said some "bad words." (Tr. 1745.) Plaintiff told Dr. Brown that Dr. Duvall, "was laughing at me and making funny noises" but Dr. Duvall told him they had to get along to finish the tests. (Tr. 1745.) Plaintiff told Dr. Brown he was overwhelmed during the appointment with Dr. Duvall. (Tr. 1745.) He also testified that "I felt like he was making fun of me so I yelled at him." (Tr. 77.) He testified that he could not focus and wanted to "get out of there" but Dr. Duvall would not let him. (Tr. 77.) No similar interactions were reported from any other neuropsychological evaluation. Dr. Thompson noted plaintiff was "not overly stressed by the tests" and "very upbeat and cooperative." (Tr. 761.) Dr. Muscatel reported plaintiff was "attentive, cooperative, fully compliant and pleasant to examine." (Tr. 1190.) Dr. Drew found plaintiff to be "friendly and cooperative." (Tr. 1626.) Based on the totality of the evidence, it is unreasonable to conclude that Dr. Duvall's experience with plaintiff is the most accurate representation of plaintiff's performance.

The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation. *Andrews v. Shalala*, 53 F.3d 1035, 1039-1040 (9th Cir.1995) However, in determining whether there is substantial evidence to support the ALJ's decision, the court reviews to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.1989). The court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Tackett v. Apfel*, 180 F.3d 1094, 1097-1098 (9th Cir. 1999). Considering the record as a whole, the ALJ's interpretation of the evidence is not supported by the record.

1    2.    **Credibility**

2        Plaintiff argues the ALJ erred in finding plaintiff not credible. (ECF No. 26 at 18-21.) In

3    social security proceedings, the claimant must prove the existence of a physical or mental

4    impairment by providing medical evidence consisting of signs, symptoms, and laboratory

5    findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908.

6    The effects of all symptoms must be evaluated on the basis of a medically determinable

7    impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once

8    medical evidence of an underlying impairment has been shown, medical findings are not

9    required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345

10   (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an

11   alleged symptom and there is no evidence of malingering, the ALJ must provide specific and

12   cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not

13   discredit pain testimony merely because a claimant's reported degree of pain is unsupported by

14   objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following

15   factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies

16   in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living

17   activities; (4) claimant's work record; and (5) testimony from physicians or third parties

18   concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d

19   947, 958 (9th Cir. 2002).

20       If the ALJ finds that the claimant's testimony as to the severity of her pain and

21   impairments is unreliable, the ALJ must make a credibility determination with findings

22   sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

23   claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of

24   affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing."

25   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d

26   1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the

27   testimony she or he finds not to be credible and must explain what evidence undermines the

     testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted).

         The ALJ noted Dr. Duvall's finding of malingering and found the credibility questions

     addressed by Dr. Duvall cast doubt on plaintiff's allegations. (Tr. 20.) Evidence of malingering

     may by itself justify a negative credibility determination. *See Lingenfelter*, 504 F.3d at 1036;

*Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *Bunnell*, 947 F.2d at 345. As discussed *supra*, Dr. Duvall's findings require additional scrutiny in the context of the record. As noted by defendant, however, the ALJ cited one additional reason for the negative credibility determination. (ECF No. 27 at 17-18.)

The ALJ found plaintiff's daily activities show he has greater abilities than alleged. (Tr. 18.) While evidence about daily activities is properly considered in making a credibility determination, a claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might not be possible to rest or take medication. *Id.* However, daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ cited plaintiff's ability to drive his wife to and from work, volunteer work at an assisted living shelter (Tr. 1537-38), cooking (Tr. 759), shopping (Tr. 809, 1625, 1725), caring for a dog (Tr. 250, 270), helping with child care (Tr. 270), and yard work (Tr. 271, 809, 1155) as inconsistent with plaintiff's allegations. (Tr. 18.) Further, the ALJ noted plaintiff could "track details of three different legal proceedings." (Tr. 18, 1611.) The ALJ observed that despite claims of memory gaps and an inability to follow directions, plaintiff has driven independently since the August 2005 accident, including driving to stores, schools, medical appointments and other locations. (Tr. 18, 1611.) According to the ALJ, plaintiff's ability to use a GPS tracking device and maps to help with directions shows that he has retained functional abilities. (Tr. 18, 1724.)

Plaintiff's limited volunteer work at an adult family home does not demonstrate greater abilities than alleged. His supervisor Diep Miller reported plaintiff volunteered 1-2 hours three days per week in hopes of future employment. (Tr. 1537.) Mr. Miller indicated plaintiff was successful working with the elderly residents but, "Although he is pleasant to work with and eager to learn he struggles to retain the needed memory, skills or ability required to work independently." (Tr. 1537.) Mr. Miller noted problems completing paperwork in its entirety and struggles with detail-oriented tasks. (Tr. 1537.) Mr. Miller also indicated plaintiff did not meet the demands of a position requiring orientation to detail, multiple scheduling ability, multi-tasking and other duties. (Tr. 1537.) This assessment is consistent with plaintiff's reported

difficulty with short term memory, concentration and directions. (Tr. 18, 75, 1511.) Furthermore, the ALJ found Mr. Miller's statement credible, although the frequent public contact mentioned by Mr. Miller is inconsistent with the RFC limitation to infrequent public contact. (Tr. 24.) However, the ALJ did not address or explain how Mr. Miller's observations about plaintiff's struggles with memory, ability to work independently, completing tasks, and attention to detail are inconsistent with plaintiff's allegations.

Similarly, daily activities like cooking, shopping, caring for a dog, and yard work may in some instances indicate a lack of credibility. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). In this case, these activities are not particularly compelling as clear and convincing evidence of a lack of credibility. There is no evidence these activities are performed for a significant portion of the day or in a manner transferable to the workplace. For example, the only evidence plaintiff takes care of a dog is his own report and his fiancé's report which state he feeds the dog with reminders and occasionally walks the dog. (Tr. 250, 270.) Similarly, the "cooking evidence" involves one statement that he prepares dinner.[4] (Tr. 759.) Plaintiff reports he cooks primarily frozen foods and his fiancé reported that he cooks simple meals only. (Tr. 251, 271.) This is not the type of evidence which constitutes "clear and convincing" evidence of behaviors inconsistent with his claimed mental limitations.

Other evidence cited by the ALJ includes plaintiff's use of a GPS device and maps. (Tr. 18.) Defendant points out Dr. Duvall noted plaintiff used written instructions from him, notes from his wife and a GPS in his auto to get the office. (Tr. 1724.) Notwithstanding, plaintiff reported driving "around and around" trying to locate the office which is clearly marked from the street. (1724.) It is unclear how plaintiff's unsuccessful use of notes and a GPS reflect greater capabilities than alleged. The fact that plaintiff attempted to use a GPS and struggled to get to the location more reasonably reflects that plaintiff is, perhaps, impaired.

For these reasons, the ALJ's credibility finding is not supported by clear and convincing reasons or substantial evidence. As a result, the ALJ erred.

**3.    Step Three**

---

[4] Defendant cites three instances of evidence that plaintiff cooks, but all references are to the same line in Dr. Thompson's report. (ECF No. 27 at 18, Tr. 520, 759, 1053.)

Plaintiff argues the ALJ should have found plaintiff's impairments meet or equal Listing 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF No. 26 at 21.) The listings include the "symptoms, signs and laboratory findings" that make up the characteristics of each listed impairment. 20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. 20 C.F.R. § 404.1526. Plaintiff bears the burden of establishing she meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). If plaintiff meets the listed criteria for disability, he is presumed to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ found the severity of plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listing 12.04, 12.07 and 12.08. (Tr. 15.) Plaintiff argues more specifically that while the ALJ evaluated Listing 12.04, the ALJ erroneously concluded the "paragraph B" criteria was not met. (ECF No. 26 at 22.)

Part B of Listing 12.04 is satisfied when the claimant's mental impairments satisfy two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. 20 C.F.R. Part 404, Subpart P, Appendix 1. A "marked" difficulty is one that interferes seriously with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis. *Id.* at 12.00C. The ALJ found plaintiff has a mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence or pace; and no episodes of decompensation. (Tr. 15.) Thus, because the ALJ found plaintiff's mental impairments did not cause at least two "marked" limitations, the paragraph B criteria were not satisfied. However, because the ALJ made errors in considering the psychological opinion evidence, the step three finding may be affected. As a result, on remand, the ALJ should reconsider the step three finding and provide a legally sufficient explanation for his conclusions.

**4.    Step Five**

Plaintiff argues the ALJ erred at step five in determining plaintiff can perform jobs existing in significant numbers in the national economy. (ECF No. 26 at 24.) Because of the errors in considering the opinion evidence and the credibility finding, the step five finding may be affected. On remand, the ALJ should make a new step five finding as is appropriate.

1

### CONCLUSION

2     The ALJ's decision is not supported by substantial evidence and free of legal error. On

3  remand, the ALJ should obtain the April 2008 evaluation by Dr. Muscatel not currently part of

4  the record; obtain the opinion of a medical expert qualified to analyze and assess the

5  neuropsychological evidence; reconsider the medical opinion evidence; make a new credibility

6  determination; and, if necessary, reconsider the step three and step five findings.

7     **IT IS ORDERED:**

8     1.     Plaintiff's Motion for Summary Judgment **(ECF No. 26)** is **GRANTED.** The

9  matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42

10 U.S.C. 405(g).

11    2.     Defendant's Motion for Summary Judgment **(ECF No. 27)** is **DENIED**.

12    3.     An application for attorney fees may be filed by separate motion.

13    The District Court Executive is directed to file this Order and provide a copy to counsel

14 for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be

15 **CLOSED**.

16    DATED July 10, 2014

17

18                          ____*s/Fred Van Sickle*____
                                Fred Van Sickle
19                      Senior United States District Judge

20

21

22

23

24

25

26

27

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18